---------------------------
                          :
METROPOLITAN ESTATES INC.:
et al,                    :
                          :          TRANSCRIPT
          vs.             :
                          :             OF
EMMONS-SHEEPSHEAD BAY     :
DEVELOPMENT,              :          MOTION
                          :
                          :
---------------------------

                    Date:  December 12, 2014

                    Place: U.S. Bankruptcy Courthouse
                           271-C Cadman Plaza East
                           Brooklyn, NY  11201

B E F O R E:

     HONORABLE ELIZABETH S. STONG, U.S.B.J.

TRANSCRIPT REQUESTED BY:

     ROBERT A. GAVIN, Clerk of the Court

A P P E A R A N C E S:

     WILLIAM CURTIN, ESQ. (via telephone)
     Trustee

     LORI A. SCHWARTZ, ESQ.
     Robinson Brog Leinwand Greene Genovese & Gluck,
     P.C. (via telephone)
     Attorney for Debtor/defendant on motion

     KARAMVIR DAHIYA, ESQ. (via telephone)
     Attorney for Plaintiff on motion

                    Transcriber, Linda Noce
                    AudioEdge Transcription, LLC
                    425 Eagle Rock Avenue - Suite 201
                    Roseland, NJ  07068
                    (973) 618-2310
                    www.audioedgetranscription.com

I N D E X

12/12/2014

Page

THE COURT:  Decision                        5

1          THE COURT:  All right.  Good afternoon.  This

2     is Judge Stong.  I apologize for my lateness in taking

3     the bench and thank you for your patience.  Some

4     unexpected matters that required prompt attention came

5     up in court -- excuse me, in chambers.  Let's get your

6     appearance on the record, please.  Since you're on the

7     phone I'll -- I'll actually do a call.  Plaintiff's

8     counsel, Mr. Dahiya.

9          MR. DAHIYA:  Yes, Ma'am.  Karamvir Dahiya

10    for the plaintiff.

11         THE COURT:  Thank you.  Ms. Schwartz.

12         MS. SCHWARTZ:  Lori Schwartz, Robinson Brog

13    Leinwand Greene Genovese & Gluck, for Emmons-Sheepshead

14    Bay Development.

15         THE COURT:  Mr. Curtin.

16         MR. CURTIN:  Thank you, Your Honor.  William

17    Curtin for the United States Trustee.

18         THE COURT:  All right.  The matters on the

19    calendar today include the status conference, the

20    pretrial conference in this adversary proceeding, and

21    the Court's ruling, which I'm prepared to give you, on

22    the motion to dismiss.  I propose to take up the

23    status conference first, and then -- and Mr. Curtin,

24    you're welcome of course to stay on the line for the

25    adversary proceeding, but I also understand if that's

1    not something that you need to participate in, you can

2    be excused at that point.   So -- so -- so let's begin

3    with status and debtor's counsel.  Miss Schwartz, let

4    me hear from you.

5         MS. SCHWARTZ:  Thank you, Judge.  There

6    hasn't been that much activity since our last

7    conference.  I did want to let the Court know and the

8    Trustee's office know that we received the information

9    we needed from the plan administrator with respect to

10   the debtor's post-confirmation disbursements.  There

11   have been no disbursements from May through November.

12   We've prepared an affirmation that will be filed

13   hopefully this afternoon actually.  I'm advised that

14   there have been some small discussions in December.

15   Once the month concludes, we'll be able to catch up

16   with that report and then the debtor will be current

17   with respect to its reporting requirement.

18        THE COURT:  All right.  Anything further on

19   status from the United States Trustee?  Mr. Curtin?

20        MR. CURTIN:  I think Miss Schwartz's comments

21   cover my concerns.  I was going to raise that issue.

22   Once that's filed, we can give them an accurate number

23   and quarterly fees (indiscernible) some quarterly fees.

24        THE COURT:   All right  And Mr. Dahiya,

25   anything to add on status from your client's

1    perspective?

2            MR. DAHIYA:  No, nothing, Judge.

3            THE COURT:  All right.  Thank you so much.

4    And I'd like to turn then to the adversary proceeding,

5    and the pretrial conference, and of course the motion.

6    Is there anything that would be helpful to the parties

7    to put on the record before we turn to the motion?

8            MS. SCHWARTZ:  No, Judge.  I think we're

9    prepared to hear Your Honor's decision.

10            THE COURT:  Okay.  And Mr. Dahiya?

11            MR. DAHIYA:  No, Judge, nothing.

12            THE COURT:  Mr. Curtin, you're welcome to

13    stay, but you're free to go.

14            MR. CURTIN:  I'll stay on.

15            THE COURT:  All right.  And -- and that

16    brings us of course then to the motion to dismiss that

17    has been brought in this case, and I'm prepared to

18    proceed.

19            Before the Court is the motion of Emmons-

20    Sheepshead Bay Development LLC, the defendant and the

21    debtor in the main bankruptcy case, to dismiss the

22    amended complaint in this adversary proceeding.  As the

23    record reflects, the plaintiffs in this matter are

24    Metropolitan Estate Inc., Albert Wilk derivatively on

25    behalf of Emmons Avenue LLC, Albert Wilk d/b/a Wilk

1    Real Estate Ltd., and Alex Dikman.   Collectively I

2    shall refer to them from time to time as the

3    plaintiffs.   The debtor is the sponsor of a

4    condominium development known as The Breakers at

5    Sheepshead Bay Condominium, located at 3112 Emmons

6    Avenue, Brooklyn, and I shall refer to that from time

7    to time as the property.   The plaintiffs are unsecured

8    creditors of the debtor, and alleged partial owners of

9    both the debtor's predecessor company and the property.

10           The matter to be decided by the Court in

11   today's motion is whether the defendant has shown that

12   the plaintiffs have not met their burden to plead, and

13   at relevant points with particularity, plausible claims

14   sufficient to survive the scrutiny that comes with a

15   motion to dismiss under Rule 12(b)(6).  Specifically,

16   they seek to state claims, as I'll describe in greater

17   detail, pursuant to Bankruptcy Code Section 1144 and on

18   related grounds, and seek the relief of revocation of

19   the Court's order confirming the debtor's amended plan.

20           Turning to the question of jurisdiction, this

21   Court has jurisdiction over this adversary proceeding

22   pursuant to 28 U.S.C., Sections 157(a) and 1334, and

23   this proceeding constitutes a core proceeding under 28

24   U.S.C., Sections 157(b)(2)(A) and (L), among other

25   provisions.

1    There's an extensive procedural history here,

2    and some of the issues are not new to the Court.  So I

3    shall describe in some respects aspects of the

4    procedural history that are relevant to this adversary

5    proceeding and to the Court's ruling today.  Of course

6    the record controls, and I refer the parties

7    respectfully to the entire record in the case that I

8    have considered in assessing the motion and reaching my

9    decision.

10   On or about August 30, 2012, there was a

11   bankruptcy petition filed in In Re Emmons-Sheepshead

12   Bay Development LLC case, docket number 1 in the main

13   bankruptcy case.  The debtor filed a disclosure

14   statement some months later on February 1, 2013.  On

15   February 28, 2013, the plaintiffs filed an objection to

16   the debtor's disclosure statement, and on that same

17   date, February 28, 2013, the plaintiffs moved for a

18   Rule 2004 examination of the debtor, Emmons Avenue LLC,

19   Jacob Pinson, and T.D. Bank N.A.

20   Also in February 2013 the debtor filed an

21   amended disclosure statement.  And on April 5, 2013,

22   the debtor filed a second amended disclosure statement

23   and an amended plan.  On that same date, April 5, 2013,

24   the debtor filed an objection to the Rule 2004

25   examination motion.  And on April 11th, the plaintiffs

1  filed an objection to the second amended disclosure

2  statement.  On that same day the Court directed the

3  parties to submit a proposed discovery order in

4  connection with their various disputes.

5            On or about April 17, 2013, the Court issued

6  an order approving the debtor's second amended

7  disclosure statement, finding that it contained

8  adequate information and overruling the objections that

9  had been asserted, including by the plaintiffs here.

10 On April 26, 2013, the Court issued a scheduling order

11 directing the parties to serve notices of deposition or

12 notices of Rule 2004 examination by June 21, 2013.

13           On June 25, 2013, the plaintiffs filed a

14 motion to extend time in order to complete discovery.

15 And on June 26, the next day, 2013, the plaintiffs

16 submitted their ballot voting against confirmation of

17 the debtor's amended plan.  On that same day, June 26,

18 2013, the plaintiffs filed a motion to compel a

19 response to discovery requests, and also filed an

20 objection to the confirmation of the amended plan.

21           On July 3, 2013, the Court issued an order

22 approving and confirming the debtor's Chapter 7 --

23 excuse me, Chapter 11 amended plan and found, among

24 other things, that it had been proposed in good faith.

25 This Court overruled all of the objections that had

1   been asserted to the amended plan.  And I'll refer from
2   time to time to that July 3, 2013 order as the
3   confirmation order.

4           Moving ahead.  On July 17, 2013, the
5   plaintiffs made a motion to reconsider or vacate entry
6   of the confirmation order.  About five or six weeks
7   later on August 28, 2013, the Court denied the
8   plaintiff's motion to vacate the confirmation.  And on
9   or about Oct -- excuse me, November 26, 2013, according
10  to the debtor and pursuant to the confirmed amended
11  plan, property was sold to a third party, 3112 Emmons
12  Lofts LLC.

13          On January 6, 2014, the plaintiffs commenced
14  this adversary proceeding which seeks the revocation of
15  the confirmation order entered by this Court pursuant
16  to Bankruptcy Code Section 1144.  Some months later on
17  April 16, 2014, the plaintiffs filed an amended
18  complaint pursuant to an order of the Court granting a
19  final extension of time within which to amend the
20  complaint.  And on April 17, the plaintiffs amended the
21  caption of that amended complaint.  That is the
22  operative complaint, that amended complaint.  And on
23  July 30, 2014, the defendant filed this motion to
24  dismiss the adversary proceedings, which I shall refer
25  to from time to time as the motion to dismiss.  That

1   motion was fully and amply briefed by the parties.

2          The plaintiffs filed an affirmation in

3   opposition to the motion to dismiss on September 8,

4   2014.  And the next day, September 9, 2014, the Court

5   held a continued pretrial conference on the adversary

6   proceeding and hearing on the motion to dismiss.

7          About two weeks later, on September 23, 2014,

8   in the District Court, the District Court denied the

9   plaintiff's appeal of this Court's denial of the motion

10  to vacation confirmation, entering an opinion and order

11  to that effect.

12         On October 17, 2014, the debtor filed a reply

13  to the plaintiff's opposition.  The Court held a

14  continued pretrial conference on the adversary

15  proceeding and a continued hearing on the motion to

16  dismiss on November 25, 2014, just a few weeks ago.  I

17  closed the record and reserved decision on the motion

18  to dismiss, and that brings us to today where, as

19  indicated on the record, I am prepared to issue my oral

20  ruling on that motion.

21         By this motion, the defendant seeks the

22  following relief.  In substance, the entry of an order

23  pursuant to Federal Rule of Civil Procedure 12(b)(6),

24  made applicable here by the Federal Rule of Bankruptcy

25  Procedure 7012, dismissing the amended complaint for

1    failure to state a claim upon which relief may be

2    granted.  Where appropriate, to the extent that the

3    plaintiff's claim sound in fraud, the defendant also

4    invokes Federal Rule of Civil Procedure 9(b).  And

5    finally, the defendant seeks definitive relief in that

6    the defendant also seeks that the dismissal be with

7    prejudice and without leave to re-plead.

8         I turn to the background, going beyond the

9    procedural history, and I draw this summary of the

10   background from the record in the case, including the

11   amended complaint, the well pleaded allegations of

12   which on a motion to dismiss are taken as true, the

13   defendant's motion to dismiss, and the District Court's

14   denial of the plaintiff's appeal of this Court's

15   decision on the motion to vacate the order of

16   confirmation.

17        The debtor, Emmons-Sheepshead Bay Development

18   LLC, also the defendant in this matter, as indicated

19   previously filed a petition for relief under Chapter 11

20   of the United States Bankruptcy Code on or about August

21   30, 2012.  The debtor is the sponsor of a condominium

22   development known as The Breakers at Sheepshead Bay

23   Condominium located, again as noted above, at 3112

24   Emmons Avenue, Brooklyn.  That property was the sole

25   substantial asset of the debtor.  The plaintiffs here,

1    again as previously identified, are Metropolitan

2    Estates Incorporated, sometimes referred to as

3    Metropolitan, Alex Dikman, the principal of

4    Metropolitan, and Albert Wilk, a real estate broker as

5    Wilk Real Estate Limited, and Emmons Avenue LLC, which

6    I'll refer to sometimes as Emmons.

7            The plaintiffs are unsecured creditors of the

8    debtor and alleged partial owners of both the debtor's

9    predecessory (sic) company and the property.

10   Metropolitan owns a 10 percent ownership of Emmons and

11   asserts the right to bring this suit derivatively.

12           The plaintiffs participated as indicated in

13   the extensive procedural history, only a portion of

14   which I have summarized on the record of today's

15   hearing, in this bankruptcy case, including in many

16   hearings and at many junctures of the process leading

17   up to the confirmation of the debtor's amended plan.

18   The plaintiff's participation included among other

19   things, opposition to the debtor's initial disclosure

20   statement and the second amended disclosure statement

21   and the debtor's plan.  They also participated by

22   seeking discovery pursuant to the bankruptcy code and

23   rules.

24           In their objection to the second amended

25   disclosure statement, the plaintiffs argued that it did

1   not contain adequate information pursuant to Bankruptcy

2   Code Section 1125(b) because the plaintiffs were

3   seeking information through discovery related to, and

4   now I quote, "potentially fraudulent assignments and

5   conveyances, unauthorized modifications, undisclosed

6   disbursements, and potential siphoning of funds that

7   bears directly on the administration of the debtor's

8   estate."

9          Before the discovery deadline set by the

10  Court, the parties also engaged in settlement

11  discussions.  The debtor at one point made a settlement

12  offer, and the plaintiffs questioned whether it was

13  consistent with or disparate from the positions taken

14  in the negotiations.  By contrast, the plaintiffs

15  argued that the debtor had negotiated in bad faith, and

16  that for those reasons the plaintiff should be granted

17  a further extension of the discovery period.  The

18  plaintiffs also objected to confirmation of the amended

19  plan.  They appeared at and participated in the hearing

20  and the confirmation of the amended plan, throughout

21  this process represented zealously by counsel, and they

22  voted against the confirmation of the amended plan.

23          In their objection to the amended plan, the

24  plaintiffs argued that the amended plan was not

25  proposed in good faith and therefore it violated the

1   requirement of the Bankruptcy Code Section 1129(a)(3)

2   that a plan be proposed in good faith and not by any

3   means prohibited by law.  They also argued that their

4   discovery was not complete.

5           The Court heard and considered with care each

6   and all of the objections to confirmation, overruled

7   the objections to confirmation, and entered the

8   confirmation order on July 3, 2013, finding among many

9   other things that the amended plan was proposed in good

10  faith.  All objections were overruled.

11          Thereafter, the plaintiffs moved to vacate

12  the confirmation order.  The Court denied the motion to

13  vacate confirmation.  That order was appealed -- excuse

14  me.  The plaintiffs then appealed the Court's order

15  confirming the amended plan to the District Court.

16  That appeal was denied.  Judge Mauskopf found that the

17  appeal contained several procedural deficiencies, and

18  separately found that the plaintiffs had not

19  established a basis to vacate the confirmation of the

20  amended plan.  The District Court also rejected the

21  plaintiff's due process claims and closely chronicled

22  the full process that plaintiffs undertook leading up

23  to and during the confirmation process and hearing, and

24  the District Court concluded that, and now I quote,

25  "The Bankruptcy Court assiduously protected

1  Metropolitan's due process rights during the

2  proceedings below, and Metropolitan participated

3  aggressively at each stage of the pre-confirmation

4  bankruptcy process.  The premise that Metropolitan was

5  denied due process is simply unsupportable," Emmons-

6  Sheepshead Bay memorandum and order, 13-CB-5430, a

7  decision of the United States District Court for the

8  district -- for the Eastern District of New York, at

9  Page 17.

10          Let me turn to the amended complaint.  In

11  their amended complaint the plaintiffs attempt to

12  assert a claim under Bankruptcy Code Section 1144 for

13  the revocation of this Court's order of confirmation of

14  the amended plan, as well as, now I quote, "the

15  debtor's discharge" on the grounds that the

16  confirmation order was procured by fraud caused by,

17  among other things, a lack of due process and a lack of

18  candor by the debtor.  Among other things the

19  plaintiffs argue in substance that the debtor and its

20  principals committed fraud on the Court by

21  misrepresenting the value of the property.

22          The plaintiffs set forth in the amended

23  complaint a detailed narrative of the events related to

24  the property prior to the debtor's bankruptcy filing.

25  These include, drawing from the amended complaint, the

following.  The plaintiffs allege that under a January

13, 2005, written agreement, Metropolitan agreed to

provide $1.5 million in funding to Emmons, which then

owned the property.  The plaintiffs state that the 2005

agreement promised repayments in the form of a $1.5

million payment and an additional 1.5 million of

profits, and also granted Metropolitan a 10 percent

ownership interest in both the property and in Emmons.

The amended complaint reports that Metropolitan

performed its obligations to provide those funds to

Emmons.

The plaintiffs allege that despite an

"implied understanding", that Emmons would not modify

the existing mortgages on the property without

Metropolitan's consent.  Emmons and the debtor executed

multiple mortgage modifications and new mortgages with

the consent of Metropolitan in both 2006 and 2007,

which raised the minimum release price of each

condominium unit, increased Emmons' debt from 23

million to over 30 million, and consolidated Emmons'

loans.  According to the plaintiffs, Emmons conveyed

the property to the debtor on September 29, 2007, for

no consideration, outside the ordinary course of

business, and without notice to or consent by

Metropolitan.  The plaintiffs state that after the

1    transfer, Emmons and the debtor again modified the

2    mortgages on the property to provide its secured

3    lender, T.D. Bank, with more favorable terms.  And the

4    plaintiffs allege that beginning in May 2011,

5    Metropolitan repeatedly contacted Emmons to access its

6    books and records to assess whether it had violated the

7    2005 agreement.  The plaintiffs allege that despite

8    Metropolitan's assertions of entitlement as partial

9    owner of Emmons to information related to the property,

10   Emmons did not respond to Metropolitan's requests.  The

11   plaintiff sued the debtor, Emmons, and Emmons'

12   principals in state court prior to the bankruptcy

13   filing related to some or all of these concerns.

14          The plaintiffs in the amended complaint here

15   before this Court also make allegations related to the

16   debtor's bankruptcy petition and process leading to the

17   entry of the confirmation order.  In substance they

18   argue that the debtor misrepresented the value of the

19   property.  The plaintiffs also argue, among other

20   things, that counsel for the debtor mislead the Court

21   that an expedited confirmation hearing was necessary on

22   the basis, now quoting, "false pretense that investors

23   would walk away."   The value of the property was

24   listed in the debtor's filings as 14 million, but

25   plaintiffs assert in substance that the fact that the

1   property eventually sold for a price of some $30

2   million demonstrates that the debtor's bankruptcy

3   petition deliberately mis-stated the property's value.

4   During the pendency of the debtor's Chapter 11's case,

5   the debtor appeared and moved in the 2004 examination

6   motion to examine the debtor's officers, books, and

7   records.  The plaintiffs also objected to the debtor's

8   second amended disclosure statement, to the continuing

9   compensation of Jacob Pinson, the principal of the

10  debtor, and to the confirmation of the debtor's plan.

11  Excuse me, the debtor's amended plan.

12          Prior to the confirmation of the amended

13  plan, the plaintiffs argued that discovery and issues

14  of disclosure remained in dispute and that the Court

15  should grant a further extension of discovery due to

16  the "total secrecy about the basis of the numbers

17  regarding liability and assets of the debtor and also

18  contentions of the debtor regarding creditors."  The

19  plaintiffs allege that after the Court issued its April

20  26, 2013 scheduling order setting the June 21, 2013

21  discovery deadlines, the debtor negotiated in bad faith

22  to prevent the plaintiff from seeking discovery.  On

23  June 18, 2013, the plaintiff requested a further

24  extension of discovery, which the Court denied.

25          The plaintiffs also allege that the debtor's

1    principal, Jacob Pinson, siphoned off the corporate

2    debtor's assets, sold property units at higher prices

3    than disclosed to the Court, and concealed these facts

4    from the Court.  They allege that the amended plan

5    relieved him of personal liability on a mortgage on his

6    personal residence.  And the plaintiff's also make

7    allegations about events after the confirmation of the

8    amended plan, including that the property was

9    immediately conveyed without marketing to maximize the

10   sale price, but they do not specifically describe the

11   relevance of events after the entry of the confirmation

12   order to their allegations and their claim that there

13   was fraud in the procurement of that confirmation

14   order.

15          In the plaintiff's first count, Count One,

16   they seek relief pursuant to Bankruptcy Code Section

17   1144 and argue that "had the debtor made full candid

18   and complete disclosures to the Court regarding the

19   value of the property, the debtor would not have

20   satisfied the requirement" of good faith pursuant to

21   Section 1129.

22          The plaintiffs plead three additional claims

23   essentially grounded in these same concerns, and argue

24   in substance that these claims support their

25   allegations of a fraud in the procurement of the

1   confirmation order.

2          In Count Two the plaintiffs challenge the

3   validity of the transfer of the property, and assert

4   that the property was not property of the debtor's

5   estate pursuant to Bankruptcy Code Section 541 because

6   it was transferred to the debtor from its predecessor

7   Emmons for no consideration and outside the ordinary

8   course of business.  The plaintiffs argue in substance

9   that had this information been disclosed to the Court,

10  the amended plan would not have been confirmed because

11  "the sole asset that supports the plan was not part of

12  the bankruptcy estate."

13         In Count Three, the plaintiffs allege that

14  the amended plan violates the absolute priority rule

15  because the principal of the debtor benefits from the

16  amended plan, but the unsecured creditors do not.  The

17  plaintiffs claim that the debtor's principal received a

18  discharge of personal liability on his primary

19  residence.  They also allege that the lender, counsel,

20  and principal of the debtor colluded to abuse the

21  bankruptcy process for their personal benefit.  They

22  maintain that the withholding of information and access

23  to the debtor's records, the sale of the property to

24  the debtor, and the eventual sale of the property by

25  the debtor under the confirmed plan are all indicators

1   of the abuse of the process and of defrauding the

2   plaintiffs and misleading this Court.

3           Finally, in Court Four the plaintiffs allege

4   that the denials of their discovery requests and the

5   debtor's withholding of material information constitute

6   a due process violation, and separately a basis for

7   revoking the confirmation order.

8           I turn to the motion to dismiss the amended

9   complaint.  The debtor defendant here seeks dismissal

10  of the amended complaint for failure to state a claim

11  upon which relief may be granted, and requests that the

12  amended complaint be dismissed with prejudice and

13  without leave to re-plead.  The defendant notes that

14  the only basis for a revocation of the confirmation

15  order is that the order was procured by fraud, and

16  argues that the plaintiffs have not met their pleading

17  burden.  Defendant argues that the amended complaint

18  fails to plead with particularity plausible allegations

19  that are sufficient to state the plaintiff's claim that

20  the confirmation order was procured by fraud, pursuant

21  to Section 1144.

22          The debtor argues that the amended complaint

23  contains no new allegations or arguments, and that each

24  of the plaintiff's claims has already been asserted and

25  found by this Court or by the District Court to be

1    without merit.  The defendant additionally argues that

2    issues raised in this proceeding are duplicative of the

3    allegations in the plaintiff's appeal of the order

4    denying the motion to vacate confirmation, which has

5    since been -- which appeal has since been rejected by

6    the District Court.  And the defendant states that the

7    District Court's decision should be relied upon as the

8    final adjudication of this matter.

9           The defendant argues that the plaintiff's

10   objection to confirmation of the amended plan was

11   limited to whether the amended plan was proposed in

12   good faith pursuant to Bankruptcy Code Section

13   1129(a)(3), where the Court applied the good faith

14   standard and found the amended plan to be in

15   compliance.  The defendant argues that the Court's

16   conclusions as to good faith demonstrate the absence of

17   fraud.

18          As to valuation of the property, the

19   defendant argues that the defendant's petition

20   described the $14 million valuation of the property as

21   "estimated and subject to appraisal by a court of

22   competent jurisdiction."  As a result, the debtor

23   states that its statements as to the property's value

24   are not fraudulent even when viewed in light of the

25   ultimate $30 million sale price.

1          The debtor also states as the debtor in this

2     -- excuse me, the defendant in this adversary

3     proceeding also states that as the debtor in this

4     Chapter 11 case it fully disclosed to the Court,

5     including on the debtor's second amended disclosure

6     statement, information about the transfer of ownership

7     of the property and about the agreements between the

8     debtor and the plaintiffs.

9          The debtor argues that many of the

10    allegations in the amended complaint do not support the

11    conclusion that there was fraud in the procurement of

12    the confirmation order.  These include the plaintiff's

13    allegations with respect to their Rule 2004

14    application, their objections to the debtor's second

15    amended disclosure statement, their allegations and

16    assertions with respect to the settlement negotiations,

17    and their allegations about whether the properties,

18    property of the estate, was fraudulently conveyed or

19    was subject to the imposition of a constructive trust.

20         As to the plaintiff's allegations that they

21    were denied due process, the defendant notes that the

22    plaintiffs participated extensively in the debtor's

23    bankruptcy case, and the defendant notes that failing

24    to succeed in an argument is simply not the same as a

25    due process violation.

1          In response to the plaintiff's arguments that

2     the state court held that a constructive trust exists

3     on the property, the defendant maintains that the state

4     court did not reach the merits of adjudicating these

5     allegations before the debtor's bankruptcy filing, and

6     argues that the plaintiffs have not pleaded the

7     existence of a contrary judgment by the state court.

8          Finally, the defendant argues that Section

9     1144 of the Bankruptcy Code gives this Court a wide

10    discretion in deciding whether to revoke a confirmation

11    order.  In light of the sale of the property, the

12    defendant argues that mootness and the reliance of the

13    third-party purchase make revocation both impractical

14    and inequitable.

15         Finally, the defendant requests that this

16    Court dismiss the amended complaint with prejudice and

17    without leave to re-plead.   The defendant argues in

18    its reply to the plaintiff's opposition that the

19    plaintiff should not have leave to re-plead because

20    they cannot state a plausible claim for relief,

21    including under Bankruptcy Code Section 1144.

22    Moreover, the defendant knows that the plaintiffs have

23    already amended this complaint once, and separately

24    that they have made substantially these same

25    allegations within the framework of the motion to

1  vacate confirmation and in other contexts over the

2  course of this bankruptcy case.  Those issues, the

3  defendant notes, have been decided by this Court and

4  affirmed on appeal.  The defendant also notes that

5  leave to re-plead would impose significant cost burdens

6  and delay on the debtor inasmuch as it would require

7  the re-litigation of issues that this Court has already

8  determined.

9       The plaintiff responded extensively to the

10  motion to dismiss, and the plaintiffs make several

11  arguments.  They argue that the buyer of the property,

12  3112 Emmons Lofts LLC, was a sham third party entity

13  created by counsel for the debtor.  As such, the

14  plaintiffs argue that there is no innocent buyer, and

15  revocation therefore should not be within the wide

16  discretion of this Court.

17       The plaintiffs state that the debtor violated

18  its fiduciary duties to the estate by failing to sell

19  the property for maximum value due to an alleged lack

20  of marketing or disclosure.  The plaintiffs also argue

21  that this Court has not determined whether the state

22  court held that the property was subject to the

23  imposition of a constructive trust.

24       Turning to their fraud allegations, the

25  plaintiffs argue that the debtor's counsel represented

1   to this Court at the time of plan confirmation the

2   potential of losing investors in order to create time

3   pressure to confirm the amended plan.  The plaintiffs

4   argue that the debtor's counsel made misrepresentations

5   to the Court about the value of the property and about

6   water damage to the property.  And the plaintiffs argue

7   that the debtor's counsel made misrepresentations to

8   this Court about negotiating in good faith in the

9   context of a prospective settlement with counsel for

10  the plaintiffs.

11          The plaintiffs also argue that the <u>Twombly</u>

12  pleading standard as articulated by the United States

13  Supreme Court, that is whether the complaint states a

14  plausible claim for relief, is not applicable here

15  because the defendant, the defendant has exclusive

16  custody and control of the relevant records.

17          I turn now briefly to the applicable rules,

18  the Bankruptcy Rules and the Federal Rules of Civil

19  Procedure.  The starting point of course is Federal

20  Rule of Civil Procedure 12(b)(6) made applicable to

21  this adversary proceeding by Federal Rule of Bankruptcy

22  Procedure 7012.  That states that a complaint must

23  contain a claim upon which relief can be granted.

24          As the Supreme Court has explained, to

25  survive a motion to dismiss under Rule 12(b)(6), "A

1    complaint must contain sufficient factual matter

2    accepted as true to state a claim to relief that is

3    plausible on its face," Ashcroft vs. Iqbal, 556 U.S.

4    662, at 678 (2009).

5         Plausibility "is not akin to a probability

6    requirement," as courts in this district and circuit

7    have held.  Rather, plausibility requires, again

8    quoting, "more than a sheer possibility that a

9    defendant has acted unlawfully," In Re Dreier LLP, 452

10   B.R. 391, 406, Bankruptcy SDNY (2011), quoting Iqbal,

11   556 U.S., at 677.

12        As the Supreme Court has further explained,

13   the "factual allegations must be enough to raise a

14   right to relief above the speculative level," Bell

15   Atlantic Corp. vs. Twombly, 550 U.S. 544, at 555

16   (2007).

17        A motion to dismiss under Rule 12(b)(6)

18   requires the Court to apply those standards in a

19   particular context.  First the Court must accept all

20   factual allegations, all well pleaded factual

21   allegations as true, and must draw all reasonable

22   inferences in favor of the plaintiff.  So found the

23   Second Circuit in DiFolco vs. MSNBC Cable L.L.C., 622

24   F.3rd, at 110-11.

25        Next, the Court considers whether these well

1    pleaded allegations state a plausible claim for relief.

2    So found the Court in <u>In Re Dreier</u>, 452 B.R., at 407.

3         The concept of a well pleaded factual

4    allegation requires careful consideration and "the

5    tenet that a Court must accept as true all of the

6    allegations contained in a complaint is inapplicable to

7    legal conclusions."   So found the Supreme Court in

8    <u>Iqbal</u>, 556 U.S., at 678.   Threadbare recitals of the

9    elements of a cause of action supported by mere

10   conclusory statements do not suffice.   Again, <u>Iqbal</u>,

11   556 U.S., at 678.

12        In deciding a Rule 12(b)(6) motion, a Court

13   may "permissibly consider documents other than the

14   complaint, such as documents that are attached to the

15   complaint or incorporated in it by reference," <u>Roth vs.</u>

16   <u>Jennings</u>, 489 F.3rd 499, at 509, 2nd Circuit (2007).

17        A Court may also continue -- consider --

18   excuse me.  A Court may also consider "even if not

19   attached or incorporated by reference, a document upon

20   which the complaint solely relies and which is integral

21   to the complaint.  This principle has its greatest

22   applicability in cases alleging fraud, when a complaint

23   alleges, for example, that a document failed to

24   disclose certain facts, it is appropriate for the Court

25   in considering a Rule 12(b)(6) motion to examine the

1    document to see whether or not those facts were

2    disclosed," Roth, 489 F.3rd, at 509.

3           And finally, it is the plaintiff's obligation

4    to provide the grounds of his entitlement to relief,

5    Bell Atlantic vs. Twombly, 550 U.S. 544, at 555 (2007).

6    On a motion to dismiss, it is the movant that bears the

7    burden.

8           Claims of fraud invoke additional

9    considerations under the Federal Rules of Civil

10   Procedure, because such claims, the rules provide and

11   countless cases have confirmed, must be pleaded with

12   particularity.  For example, as the rule states in its

13   plain terms, in alleging fraud or mistake, a party must

14   state with particularity the circumstances constituting

15   fraud or mistake.  Malice, intent, knowledge, and other

16   conditions of a person mind may be alleged generally.

17   So provides Rule 9(b).

18          "The primary purpose," now quoting, "of Rule

19   9(b) is to afford defendant fair notice of the

20   plaintiff's claim and the factual ground upon which it

21   is based.  Rule 9(b) also safeguards defendant's

22   reputation and good will from improvident charges of

23   wrongdoing, and it serves to inhibit the institution of

24   strike suits," Ross vs. Bolton, 904 F.2nd 819, at 823,

25   2nd Circuit (1990).

1   The Second Circuit has read Rule 9(b), now

2   quoting, "to require that a complaint alleging fraud

3   (1) specify the statements the plaintiffs contend were

4   fraudulent, (2) identify the speaker, (3) state where

5   and when the statements were made, and (4) explain why

6   the statements were fraudulent," Rombach vs. Chang, 355

7   F.3rd 164, at 170, 2nd Circuit (2004).

8   While intent may be alleged generally, the

9   2nd Circuit has nonetheless held that a plaintiff must

10  allege facts that give rise to a strong inference of

11  fraudulent intent.  So found the Bankruptcy Court in In

12  Re Motors Liquidation Co., 462 B.R. 494, at 505.  The

13  Second Circuit has explained that this strong inference

14  of fraudulent intent may be satisfied either "(a) by

15  alleging facts to show that defendants had both motive

16  and opportunity to commit fraud, or (b) by alleging

17  facts that constitute strong circumstantial evidence of

18  conscious misbehavior or recklessness," Ganino vs.

19  Citizens Utilities Co., 228 F.3rd 154, at 168, 169, 2nd

20  Circuit (2000), quoting Shields vs. Citytrust Bancorp

21  Incorporated, 25 F.3rd 1124, and 1129 through 30, 2nd

22  Circuit (1994).

23  I turn to the central bankruptcy code section

24  at issue in this matter, Section 1144, which permits

25  revocation of an order of confirmation.  Bankruptcy

1    Code Section 1144 provides that on request of a party

2    in interest at any time before 180 days after the entry

3    of the order of confirmation, and after notice and a

4    hearing, the Court may revoke such order if and only if

5    such order was procured by fraud.  An order under this

6    section revoking an order of confirmation shall contain

7    such provisions as are necessary to protect any entity

8    acquiring rights in good faith reliance on the order of

9    confirmation and revoke the discharge of the debtor.

10   So says the rule.

11        Revocation pursuant to Section 1144 is

12   discretionary, and the Court may but need not revoke

13   the confirmation order if it finds fraud; Salzburg vs.

14   Trico Marine Services, 337 B.R. 811, at 814, Bankruptcy

15   Court of Southern District of New York (2006).  And as

16   that same Court has explained, the statute says "the

17   Court may revoke such order.  The importance of the

18   auxiliary verb may is that the decision of whether to

19   revoke a confirmation order rests in the sound

20   discretion of the Court," Investment Partners LP (sic)

21   vs. Comair, In Re Delta Air Lines Incorporated, 386

22   B.R. 518, at 532, Bankruptcy Southern District of New

23   York (2008).

24        I turn to the element and considerations of

25   fraud in the procurement of the confirmation order.

1    Fraud is not defined in the bankruptcy code in the

2    context of Section 1144.  It has been generally

3    interpreted by courts to require the party seeking

4    revocation of a confirmation order to demonstrate

5    actual fraudulent intent in the procurement of the

6    confirmation order.  One court in this circuit has

7    opined that while the term fraud has never been defined

8    by congress for fear that the craft of men should find

9    ways of committing fraud which might evade such a

10   definition, there can never be a showing of fraud

11   without proof of bad faith.  So wrote the Court in

12   Farley vs. Coffee Cupboard, 119 B.R. 14, at 18,

13   (E.D.N.Y. 1990).

14          The Sixth Circuit has held that a party may

15   prove fraud with circumstantial evidence by

16   establishing the following elements typical of other

17   fraud claims.  A representation or intentional omission

18   by the plan proponent regarding compliance with 1129,

19   one; two, which was materially false; three, that was

20   either known by the debtor to be false or was made

21   without belief in its truth, or was made with reckless

22   disregard for the truth; four, that was made to induce

23   the Court to rely upon it; five, that the Court did

24   rely upon; and six finally, that as a consequence of

25   such reliance the Court entered a confirmation order.

1   TENN-FLA Partners vs. First Union National Bank of

2   Florida, In Re TENN-FLA Partners, 229 B.R. 720, at 730,

3   Western District of Tennessee (1999), affirmed 26 F.3rd

4   746, at 750, Sixth Circuit (2000).

5           The Sixth Circuit further explained, this is

6   important, that the movant must show a fraud

7   perpetrated on the Court and not on a creditor, In Re

8   TENN-FLA Partners, 229 B.R., at 730.  In one case, the

9   Bankruptcy Court for the Southern District of New York

10  focused on the fact that in order for fraud to have

11  procured the confirmation order, "it should be shown

12  that at least some of the creditors would have voted

13  differently absent the alleged fraud, given that the

14  Court is bound by the vote of creditors when issuing

15  its confirmation order," In Re Delta Air Lines, 386

16  B.R., at 533, 34.  The Court in Delta Air Lines thus

17  distinguished between the ability to state a Section

18  1144 claim for revoking a plan based on a suit brought

19  by creditors "on the grounds that they were defrauded

20  into voting into it, voting for it" as compared to a

21  suit brought by parties who had no right to vote on

22  confirmation, or as compared to suits not joined by

23  parties that voted for confirmation of a plan who could

24  demonstrate that fraud procured their votes for the

25  plan,"  In Re Delta, 386 B.R., at 534.

1        Within the Tenth Circuit, one bankruptcy

2   court focused on the reliance of the Court in entering

3   the confirmation order, and held that a movant had

4   failed to allege facts sufficient to satisfy the fraud

5   element of a Section 1144 claim because the relevant

6   complaint failed to describe any fraud that was used to

7   induce the Court into reliance."  Bowman v. Bennington,

8   In Re Bennington, 519 B.R. 545, at 548, Bankruptcy

9   District of Utah (2014).

10       In that case, in the Bennington case, the

11  Court explained that the complaint did "not allege any

12  connection between the alleged fraud and the Court's

13  decision to enter the confirmation order," In Re

14  Bennington, 519 B.R., at 548.   And the Court in In Re

15  Bennington states that one reason the movant's

16  allegations failed to state a claim under Section 1144

17  was that the alleged fraud had already been called to

18  the attention of the Court and creditors prior to or at

19  the confirmation hearing, and accordingly there could

20  be no reliance; In Re Bennington, 519 B.R., at 549.  As

21  the Court stated, the allegations of fraud and Bowman's

22  objection to the debtor's disclosure statement and

23  Bowman's motion to dismiss were made known to the Court

24  and creditors well before the hearing on confirmation

25  and therefore cannot serve as a basis to revoke the

1    debtor's confirmation order under Section 1144.  <u>In Re</u>

2    <u>Bennington</u>, 519 B.R., at 549.

3            As to alleging fraudulent intent, the

4    Southern District of New York Bankruptcy Court has

5    explained that "to secure relief under Section 1144 of

6    the code, a movant must point to specific acts of the

7    debtor evidencing actual fraudulent intent.

8    Interference, without more, is insufficient."

9    <u>Morgenstern vs. Motors Liquidation Co.</u>, <u>In Re Motors</u>

10   <u>Liquidation Co.</u>, 462 B.R. 494, at 505 to 510,

11   Bankruptcy Southern District of New York (2012).

12           I note to similar effect the decisions of

13   Bankruptcy Courts in this circuit in <u>In Re Calpine</u>, 389

14   B.R. 323, at 324, Southern District of New York (2008)

15   where the Court explained that revocation under Section

16   1144 requires a showing of actual fraud, and a case

17   cited in the <u>Calpine</u> case, <u>In Re Hertz</u>, 38 B.R. 215, at

18   220, Bankruptcy Southern District of New York (1984).

19           As such, and as an example, in <u>In Re Motors</u>

20   <u>Liquidation</u>, the Southern District of New York

21   Bankruptcy Court analyzed the Section 1144 complaint by

22   considering the two paths to pleading fraudulent intent

23   set out by the Second Circuit in the <u>Citytrust Bancorp</u>

24   decision.  First, motive and opportunity, and second,

25   strong circumstantial evidence of conscious misbehavior

1 recklessness.  The Southern District of New York

2 Bankruptcy Court noted regarding the motive and

3 opportunity analysis, well traveled ground in this

4 circuit, that "though technically speaking any plan

5 proponent putting forward a plan for confirmation has

6 an opportunity to defraud the Court.  In this context,

7 opportunity must mean something more.  It should mean a

8 juncture in the case where the plan proponent reaches

9 the decision point or opportunity to present a plan

10 that would not defraud the Court and elects not to do

11 it."  In Re Motors Liquidation Corp., 462 B.R., at 507.

12   I turn to the question in a general way of

13 whether -- of another element to be considered by

14 courts in the context of requests for relief under

15 Bankruptcy Code Section 1144, and that is whether there

16 can be entered a remedial order able to protect

17 innocent third parties.  As the code plainly provides,

18 to grant relief pursuant to Section 1144, a Court must

19 additionally be able to craft an effective remedial

20 order that satisfies Section 1144's directive to

21 "protect any entity acquiring rights in good faith

22 reliance on the order of confirmation."

23   If a Court cannot fashion a revocation order

24 that protects innocent third parties who acquired

25 rights in reliance on the confirmation order, the Court

1       is barred, barred from revoking the confirmation order

2       even if the order was procured by fraud.  So found the

3       Court in In Re Delta Airlines, 386 BR., at 532.  In In

4       Re Trico Marine is one example.  The Southern District

5       of New York Bankruptcy Court dismissed a claim brought

6       under Section 1144 because even if the plaintiff could

7       prove fraud, it "would be exceedingly difficult to

8       unwind the plan and impossible to protect innocent

9       third parties," In Re Trico Marine, 343 BR., at 71,

10      where the Court noted that, "complex plans involving

11      transactions among the debtor, its creditors, and third

12      parties obviously present greater problems in crafting

13      such an order."  That decision was affirmed by the

14      Southern District District Court and the Second

15      Circuit.  And in reviewing the Trico Marine Bankruptcy

16      Court's decision, the District Court further explained

17      that a Court may not grant revocation of a plan

18      confirmation order unless it can fashion an order that

19      would restore the status quo existing before

20      confirmation and protect those who relied in good faith

21      on confirmation.  Salzburg vs. Trico Marine Services,

22      In Re Trico Marine reported at 382 BR., 201 and 206,

23      affirmed at 340 F. Appendix 55, Second Circuit (2009).

24              I now turn to considerations of the questions

25      surrounding Section 1144 as a limitation, as a

1    limitation on collateral challenges to confirmation

2    orders.  The finality of a confirmation order has

3    consequence for the entire restructuring process.  To

4    that end, courts recognize that "given concerns over

5    the finality of a confirmed plan, it is well

6    established that a confirmation order may be revoked

7    only if it was procured by fraud," Byasen vs. R. Capita

8    Bank, 2014 Westlaw, 6435522, at Star Bankruptcy,

9    Southern District of New York, November 17, 2014.

10           In another case that Court also stated fraud,

11   which must be on the Court, is the only basis upon

12   which the confirmation order may be revoked.  In Re

13   Motors Liquidation Co., 462 BR., at 5 somewhere and 505

14   through 510.  To the same effect, Sunny vs. Rayburn,

15   972 F. Supp. 2nd, 308, at 315.

16           As another circuit, the Ninth Circuit has

17   similarly explained, Section 1144 of the Bankruptcy

18   Code is the only avenue for revoking a confirmed

19   Chapter 11 plan.  Creditors may not otherwise

20   collaterally attack a confirmed plan even where the

21   plan contains illegal provisions.  Debt Acquisition Co.

22   Of America vs. Leonard, In Re Asset Resolution LLC.,

23   542 F. Appendix, 578, at 579, Ninth Circuit (2013).

24           That same circuit has elsewhere opined that

25   congress has determined, now quoting, "that a 180 day

1   limitations period strikes the appropriate balance

2   between the strong need for finality in reorganization

3   plans and the interest in affording parties in interest

4   a reasonable opportunity to discover and assert fraud.

5   In recognition of the strength of the interests in

6   finality of reorganization plans, courts have held

7   uniformly that strict compliance with Section 1144 is a

8   prerequisite to relief." So found that Circuit in In

9   Re Orangetree Associates Ltd, 961 F.2nd 1445, at 1447,

10  Ninth Circuit (1992).

11          I turn to the question of the standard under

12  Federal Rule of Civil Procedure 15, leave to re-plead.

13  Federal -- this federal rule, Rule 15, made applicable

14  to adversary proceedings in the Bankruptcy Court by

15  Federal Rule of Bankruptcy Procedure 7015 provides

16  guidance on amending as a matter of course and with

17  leave of Court. It also provides the framework within

18  which courts consider requests for leave to re-plead.

19          Under Rule 15(a)(2), after the time for

20  amending as of right has lapsed, "a party may amend his

21  pleading only with the opposing party's written consent

22  or the Court's leave. The Court should freely give

23  leave when justice so requires," Rule 15(a)(2).

24          In this context it is fair to say that Rule

25  15(a)(2) gives the Court wide discretion to grant or

1    deny leave to re-plead.  And as the Second Circuit has

2    explained, it is proper to deny leave to re-plead under

3    this rule where there is no merit in the proposed

4    amendment or amendment would be futile.  Owen vs.

5    Singer, 4 F. Appendix, 38, at 40, Second Circuit

6    (2001).

7         I turn now to the specific counts of the

8    complaint, of the amended complaint, and the standard

9    as articulated by the rules, the code, and the cases.

10   I note again that it is the Court's task to accept the

11   well pleaded factual allegations as true, to accept the

12   factual allegations as true, and to draw all reasonable

13   inferences in favor of the plaintiff, and I will

14   consider whether these allegations state a plausible

15   claim for relief.   First, claim one.

16        In their first claim, the plaintiffs argue in

17   substance that the debtor mislead the Court about the

18   value of the property, and in so doing procured the

19   confirmation order by persuading the Court that the

20   good faith requirement of Section 1129 was satisfied.

21   The record shows that the plaintiffs have alleged that

22   the difference between the debtor's stated value of the

23   property on its schedules, 14 million, and the ultimate

24   sale price of the property, 30 million, was a

25   misrepresentation by the debtor.  That's the

1     allegation.  The record also shows that the plaintiffs

2     have plead additional factual assertions related to the

3     title of the property and liens encumbering the

4     property prior to the time of the debtor's filing of

5     this bankruptcy case.  But the plaintiffs have not

6     alleged facts sufficient to show a connection between

7     the ownership of the property, or the secured debt on

8     the property, and the debtor's alleged mis-

9     representation of its value through the statement set

10    forth in the -- in the bankruptcy schedules.

11          In response to this claim, the defendant

12    notes that the valuation provided to -- in the debtor's

13    petition, and this is confirmed by the record, was

14    identified as estimated and subject to appraisal by a

15    court of competent jurisdiction.

16          To allege fraud in the procurement of a

17    confirmation order through misrepresentation to the

18    Court material to its good face (sic) analysis, the

19    plaintiff must make plausible allegations which states

20    as follows.  First, a representation relevant to

21    compliance with Section 1129; second, which was

22    materially false; third, that was either knowingly

23    false or made with reckless disregard for the truth;

24    fourth, that was made to induce the Court to rely upon

25    it; fifth, that the Court did rely on it; and sixth,

1    that as a consequence of such reliance, the Court

2    entered a confirmation order; In Re Tantla Partners,

3    229 BR., at 730.

4            I take first the first element, whether the

5    plaintiffs have alleged that there was made a

6    materially false representation in the context of

7    Section 1129.

8            The plaintiffs argue in substance that a

9    misrepresentation about the value of the property here

10   would have been relevant to the Court's analysis of the

11   debtor's compliance with the good faith requirement

12   under Section 1129.  But the plaintiffs do not set

13   forth in their amended complaint allegations sufficient

14   to show that the debtor made the materially false

15   representation to the Court regarding the value of the

16   property.

17           While the plaintiffs have identified to be

18   sure a significant difference, millions of dollars, in

19   the debtor's estimated value of the property at the

20   outset of the case and the ultimate sale price, the

21   debtor -- excuse me, the plaintiffs have not alleged

22   facts sufficient to show how that statement in the

23   debtor's petition at the outset of the case, that the

24   value was estimated at a certain amount, was an actual

25   -- was a -- was a materially false representation in

1    the context of the confirmation process.  In addition,

2    the plaintiffs do not otherwise allege facts to show,

3    if they were proved, that the debtor made a materially

4    false representation to this Court regarding the value

5    of the property or otherwise in the context of Section

6    1129.

7          For these reasons, and based on the entire

8    record, and having scrutinized the entire record,

9    including the amended complaint, I am satisfied that

10   the defendant has shown that the plaintiffs have not

11   alleged facts sufficient to plead the first element of

12   this claim, that is that the debtor's representations

13   as to the value of the property were materially false,

14   or that more generally, the plaintiffs made a

15   materially false representation relevant to Section

16   1129.

17          I turn to the second element, whether the

18   plaintiffs have alleged with particularity fraudulent

19   intent by the debtor.

20          As noted previously, stating a claim for

21   fraud in the procurement of the confirmation order

22   requires the plaintiffs to allege facts to show that

23   the debtor's misrepresentations were knowingly false,

24   or at least recklessly so.  In other words, the

25   plaintiffs must allege actual fraudulent intent.  In Re

1    Motors Liquidation Co., 462 BR., at 501.  Pursuant to

2    the Second Circuit's guidance, the allegations of fraud

3    that will satisfy Rule 9(b) and demonstrate this

4    necessary strong inference of fraudulent intent, the

5    plaintiff's may either (1) allege facts to show that

6    the debtor had "both motive and opportunity to commit

7    fraud", or (2) allege facts "that constitute strong

8    circumstantial evidence of conscious misbehavior or

9    recklessness."  Gettinge vs. Citizens Utilities, 228 F.

10   3rd, at 168, 69, quoting Shields v. Citibank --

11   CityTrust Bancorp.

12          As to the first path to alleging fraudulent

13   intent, that is motive and opportunity, the plaintiffs

14   argue that in general the debtor was motivated to

15   mislead the Court into confirming its amended plan.

16   However, the record shows that the plaintiffs do not

17   make factual allegations sufficient to raise this above

18   the level of motive to confirm a plan that may

19   reasonably be associated with any plan proponent.  And

20   the record shows that the plaintiffs do not make

21   factual allegations sufficient to show a motive for the

22   debtor to make a material misrepresentation to the

23   Court or to misrepresent the value of the property.

24          And while the fact that the debtors made

25   representations throughout the plan confirmation

1    process and throughout this bankruptcy case may show

2    that somehow the debtors technically had the

3    opportunity through their course of representations to

4    the Court to mislead the Court about the value of the

5    property or in some other way with respect to the

6    confirmation process, this simply is not and cannot be

7    the same as allegations that the debtor had both motive

8    and opportunity to commit fraud.  Were it otherwise,

9    then every debtor, and arguably every party who

10   participates in the bankruptcy process, has the

11   opportunity to represent to the Court and this element

12   of this element would have no substance at all.

13        As explained by the Southern District of New

14   York Bankruptcy Court in the In Re Motors Liquidation

15   matter, as noted above, quoting, "though technically

16   speaking any plan proponent putting forward a plan for

17   confirmation has an opportunity to defraud the Court,

18   in this context opportunity must mean something more.

19   It should mean a juncture in the case where the plan

20   proponent reaches the decision point or opportunity to

21   present a plan that would not defraud the Court and

22   elects not to do it," In Re Motors Liquidation Corp.,

23   462 BR., at 507.

24        The record does not show allegations by the

25   plaintiffs sufficient to show that the debtor had the

1    opportunity to present a higher valuation of the

2    property to the Court and failed to do so, that -- or

3    that otherwise the debtor somehow had fraudulent intent

4    through demonstrated allegations of motive and

5    opportunity to commit fraud.

6          With respect to the second path to alleging

7    fraudulent intent, that is strong circumstantial

8    evidence of conscious misbehavior or recklessness, here

9    the plaintiffs have alleged that the difference between

10   the value of the property stated in the petition and

11   the ultimate sale price shows the fraudulent intent of

12   the debtor.  But here, for many of the same reasons,

13   and in light of the debtor's statement that -- on the

14   petition that that value is estimated, here again these

15   allegations are simply not sufficient support to ground

16   an inference that the debtor intended to mislead the

17   Court about the value of the property or somehow

18   intended to keep from the Court facts that would have

19   revealed a different value of the property or charted a

20   different path in the confirmation process.  And

21   separately, having scrutinized the entire record,

22   including the entire amended complaint, the plaintiffs

23   do not otherwise allege facts sufficient to show, if

24   proved, that the debtor had fraudulent intent.

25          For these reasons, and based on the entire

1    record, I'm satisfied that the debtor has shown that

2    the plaintiffs have not alleged with the particularity

3    that may be required as to fraud, facts sufficient to

4    show that the second element of their first claim,

5    actual fraudulent intent of the debtor, has been

6    adequate -- has been stated.

7         I turn to the third element, the question of

8    whether plaintiffs have alleged reliance by the Court.

9    Here of course the plaintiffs must allege facts

10   sufficient to show that the debtor intended to induce

11   the Court to rely on its misrepresentation, and that

12   the Court did rely on that misrepresentation, and that

13   that reliance produced the confirmation order.

14        The record shows that the plaintiffs have

15   argued in a general way, and specifically as well, that

16   the debtor's representations about the value of the

17   property contributed to the Court's holding that the

18   amended plan was proposed in good faith pursuant to and

19   as required by Section 1129.  But the plaintiffs have

20   not alleged facts sufficient to show that the debtor

21   intended to induce or was successful in inducing the

22   Court to rely on that representation with respect to

23   the property value.  The plaintiffs have not alleged

24   facts sufficient to show how the Court relied on that

25   valuation, and in particular the initial valuation of

1    the property, in finding that the amended plan was

2    proposed in good faith.

3            And it is worth noting that the District

4    Court, considering many of these same arguments,

5    issues, and concerned (sic) concluded and wrote that

6    this Court's "determination that the plaintiffs

7    proposed in good faith is unassailable," Emmons-

8    Sheepshead Bay memorandum and order, 13 C.V., 5430, at

9    star 20.  That good faith conclusion is consistent with

10   the conclusion that fraud did not contribute to the

11   Court's good faith analysis and that there was not

12   fraud and has not been alleged in a plausible way fraud

13   in the inducement of the confirmation order.  And

14   separately, based on the entire record, which I have

15   scrutinized with care, the plaintiffs do not otherwise

16   allege facts, nor does there appear to be a plausible

17   basis to allege facts sufficient to show, if proved,

18   the required reliance elements of the Section 1144

19   claim.

20           For these reasons, and based on the entire

21   record, the defendant has shown that the plaintiffs

22   have not alleged facts sufficient to show that the

23   debtor intended to induce the Court to rely on its

24   representation regarding the value of the property,

25   that the Court did not rely on the -- excuse me, that

the Court did rely on the representation, or that the

Court's reliance procured the confirmation order.  For

these reasons, all of these reasons, and based on the

entire record, the debtor -- the defendant has shown

that the plaintiff's first claim, claim one, does not

adequately allege, with particularity where required,

facts sufficient to show fraud in the procurement of

the confirmation order through misrepresentation,

including a misrepresentation about the value of the

property, and more generally, defendant has shown, has

met its burden to show that claim one does not state a

claim for revocation of the confirmation order pursuant

to Bankruptcy Code Section 1144.  For these reasons,

and based on the entire record, the defendant's motion

to dismiss claim one is granted.

I turn to claim two and the question of

whether it states a claim, meaning a plausible claim

for relief under Section 1144 or otherwise.

In their second claim the plaintiffs assert

that the property was not property of the estate

pursuant to Bankruptcy Code Section 541 because it was

transferred to the debtor from its predecessor, Emmons,

for no consideration and outside the ordinary course of

business.  The plaintiffs argue in substance that had

this information been disclosed to the Court, the

1    amended plan would not have been confirmed because the

2    sole asset that supports the plan was not part of the

3    bankruptcy estate.

4            The record shows that the plaintiffs allege

5    that there was a history of transfers of the property

6    and encumbrances on the property prior to the debtor's

7    bankruptcy filing.  The record also shows similar

8    allegations and arguments about deceptions surrounding

9    transfers of the property were previously presented to

10   the Court at many times and in many ways, including in

11   the plaintiff's objections to the debtor's original

12   disclosure statement and the debtor's second amended

13   disclosure statement.  The record also shows that these

14   points were also alleged in the plaintiff's objection

15   to confirmation of the amended plan.   The record shows

16   that the plaintiffs set forth a detailed chronology of

17   the property's history prior to the bankruptcy filing,

18   and that the property was -- excuse me, the record

19   shows that the plaintiffs also alleged that the

20   property was subject to a constructive trust pursuant

21   to a judgment entered by the state court.

22           The plaintiffs appear to argue in substance

23   that the debtor misrepresented some or all of the

24   existence of this alleged judgment to the Court and

25   this history to the Court.  The Court notes that while

1   the Court does and must take the plaintiff's well

2   pleaded allegations to be true, now reverting to the

3   guidance provided by the Supreme Court in the <u>Twombly</u>

4   case, factual allegations must be enough to raise a

5   right to relief above the speculative level, <u>Twombly</u>,

6   550 U.S., at 555.  In fact the record shows, and a

7   thorough review of the record shows that the state

8   court did not enter a judgment that adjudicated the

9   plaintiff's allegations of a constructive trust, and

10  the plaintiffs have not alleged the existence of some

11  judgment to the contrary.  And as the District Court

12  stated, the record does not reflect any "state court

13  judgment in Metropolitan's favor finding that a

14  constructive trust existed, much less such a verdict or

15  judgment before this Court confirmed the plan,"

16  Emmons-Sheepshead's Bay memorandum and order, 13 C.V.,

17  5430, at star 21.

18          For these reasons and as such, the defendant

19  has shown that the plaintiff's allegation about the

20  status of the property are not sufficient to show that

21  the debtor made a misrepresentation to this Court in

22  the absence of allegations sufficient to establish the

23  pleading of such a misrepresentation.  The defendant

24  similarly has shown that the plaintiffs do not allege

25  facts sufficient to show that the debtor had a

1    fraudulent intent in making such a misrepresentation.

2    The defendant likewise has shown that the plaintiffs do

3    not allege facts sufficient to show that reliance by

4    the Court on any such misrepresentation as to the

5    property status occurred, and the plaintiffs do not

6    otherwise allege facts, based on a review of the entire

7    record, related to the history of the status of the

8    property, the liens, the encumbrances, or the

9    transfers, sufficient to show, if proved, the relief --

10   the reliance elements of the claim, including a

11   possible claim under Section 1144 that they seek to

12   assert under their claim three.

13        For all these reasons, and based on the

14   entire record, the defendant has shown that the

15   allegations by the plaintiff in claim two regarding

16   among other things the validity of the transfer of the

17   property, the property status as property part of the

18   estate, and alleged misrepresentations related to those

19   issues are not sufficiently pleaded plausibly to state

20   a claim of fraud in the procurement of the confirmation

21   order.  And for those same reasons, the defendant has

22   shown that claim two does not state a claim for

23   revocation of the confirmation order pursuant to

24   Bankruptcy Code Section 1144.  For these reasons and

25   based on the entire record, the defendant's motion to

1    dismiss as to claim two is granted.

2         I turn to claim three and the question of

3    whether it states a plausible claim for relief under

4    Section 1144 of the Bankruptcy Code or under any other

5    grounds.

6         In their third claim the plaintiffs allege

7    that the amended plan violates the absolute priority

8    rule because the principal of the debtor benefits from

9    the amended plan, but the unsecured creditors do not.

10   The plaintiffs also allege that the lender, counsel,

11   and principal of the debtor colluded to abuse the

12   bankruptcy process for their personal benefit.  And the

13   plaintiffs allege in substance that the debtor

14   committed fraud by withholding information in the

15   debtor's records about the sale of the property to the

16   debtor, and about the eventual sale of the property by

17   the debtor under the amended plan.

18        First, Section 1144 expressly limits, as I

19   have noted earlier, the basis for revocation of a

20   confirmation order to fraud.  "Given concerns about the

21   finality of a confirmed plan, it is well established

22   that a confirmation order may be revoked only if it was

23   procured by fraud," In Re R. Capital Bank BSC (2014),

24   Westlaw 6435522 at star 7, Bankruptcy Southern District

25   of New York, November 17, 2014.

1          The defendant here has shown by its motion,

2     and the entire record is consistent with the showing,

3     that the plaintiff's allegations regarding the absolute

4     priority rule, even if true, taken as true, are

5     unrelated to fraud, and as such are insufficient to

6     state a claim for relief under Section 1144.  And

7     separately, if somehow they were to form the basis of

8     an argument or an allegation that there was somehow

9     fraud in the debtor's efforts to advance their plan and

10    procure the confirmation order, the plaintiff has not

11    alleged sufficiently facts to show that that would be a

12    basis for relief under this claim.

13         Section 1144 provides a basis for revocation

14    of confirmation of a plan solely for fraud in

15    procurement of the plan, and this too is worth

16    consideration.  The plaintiff's allegations about

17    events after the entry of the confirmation order would

18    be highly unlikely to be allegations of events that

19    would have contributed to procuring the order in the

20    first place.  I do not rule out the possibility that

21    post-confirmation events might somehow be probative or

22    persuasive in the appropriate context of pre-

23    confirmation events, but that is not the record here.

24         As such, for these reasons and based on the

25    entire record, the defendant has shown that the

1    plaintiff's allegations about disclosure of information

2    concerning the sale of the property pursuant to the

3    confirmed amended plan are not adequate as a basis to

4    state a claim for relief under Section 1144 or

5    otherwise under the plaintiff's Count Three, and do not

6    provide a basis to conclude that the plaintiffs in this

7    count or in any of the other counts have set forth a

8    plausible claim for relief.

9         Finally, the plaintiffs make allegations

10   which might fairly be described as conclusory about

11   fraud by the debtor's principal and about an alleged

12   conspiracy between the debtor, its counsel, and

13   creditors to defraud the Court.  As the Supreme Court

14   has explained, using language which is strong but

15   appropriate, threadbare recitals of the elements of a

16   cause of action supported by mere conclusory statements

17   to not suffice to plead a claim, Iqbal, 556, U.S., at

18   678.

19        Based on the entire record, to which the

20   Court is not a stranger, the Court is satisfied that

21   the defendant by this motion has shown that the

22   plaintiffs do not allege facts sufficient to show or

23   make out a plausible allegation of a conspiracy among

24   any or all of the debtor, its counsel, and creditors,

25   to defraud the Court.  I should add that if there were

1  even the suggestion of such a fraudulent conspiracy in

2  the record, this Court would be at pains to be sure

3  that those matters could be heard fairly and fully.

4  That is not the case here.

5      I note that in the context of pleading fraud,

6  Rule 9(b) specifically aims to safeguard, now quoting,

7  "a defendant's reputation and good will from

8  improvident charges of wrongdoing" as well as to

9  provide a party notice of the specific factual

10 allegations of fraud that it can refute, <u>Ross vs.</u>

11 <u>Bolton</u>, at 904, F.2nd 819, 823, Second Circuit (1990).

12 Fraud is a serious matter.  In the appropriate context,

13 it can be the basis for a criminal action.  It should

14 not be lightly alleged.  It should, needless to say,

15 not be lightly undertaken.  It should never be

16 undertaken in the context of a court proceeding.  For

17 that reason, Rule 9(b) applies a heightened standard to

18 the allegations of a claim of fraud.

19     Having that in mind, and I should add even

20 adding a lower -- even measured at a lower standard,

21 I'm satisfied that the defendant has shown that the

22 allegations here, the reasonable inferences that they

23 support of a conspiracy between or among some or all of

24 the debtor, its principals, the debtor attorney, and

25 the debtor's creditors, are not sufficient to make out

1       a claim under the debtor's claim three, nor are they

2       sufficient to state a plausible claim or suggest the

3       existence of a plausible claim of fraud in the

4       procurement of the confirmation order.

5               Additionally, the plaintiffs do not otherwise

6       allege facts related to a conspiracy or the prospect of

7       a conspiracy or the withholding of information from the

8       Court or provision of misinformation to the Court

9       sufficient to show, if proved, the required reliance

10      elements of a Section 1144 claim, or any other claim

11      that may be alleged in the plaintiff's count three.

12              For all these reasons, and based on the

13      entire record, the defendant has shown that the

14      allegations by the plaintiff in claim three, that among

15      other things the debtor withheld information and that

16      there was a conspiracy between or among some or all of

17      the debtor, its counsel, and the principal, are not

18      sufficient to state a claim of fraud or plausibly to

19      suggest a claim of fraud in the procurement of the

20      confirmation order.

21              As a consequence and thus the debtor has

22      shown that claim three does not state a claim for

23      revocation of the confirmation order pursuant to

24      Bankruptcy Code Section 1144 or otherwise.  For these

25      reasons, and based on the entire record, the

1    defendant's motion to dismiss claim three is granted.

2            Finally I turn to the debtor's -- excuse me,

3    the plaintiff's claim four.  In this fourth claim the

4    plaintiffs allege that the Court's denial of their

5    discovery request and the debtor's withholding of

6    material information constitute a due process violation

7    and a basis for revoking the confirmation order.

8            The plaintiffs allege that after the Court

9    issued a scheduling order setting out discovery

10   deadlines for June 21, 2013, the debtor negotiated in

11   bad faith to prevent the plaintiff from seeking that

12   discovery.  The record shows that on June 18, 2013, the

13   plaintiff requested a further extension of discovery

14   and that the Court denied that request.

15           I turn back to the standard under Section

16   1144 which expressly limits the basis for revocation of

17   a confirmation order to fraud.  Again, finality

18   matters.  Now quoting, "Given concerns about the

19   finality of a confirmed plan, it is well established

20   that a confirmation order may be revoked only if it was

21   procured by fraud," In Re R. Capital Bank (2014)

22   Westlaw 6145522 at star 7, Bankruptcy Southern District

23   of New York, November 17, 2014.

24           I note second that the District Court

25   rejected, specifically rejected due process claims that

1   are substantially similar, perhaps even identical to

2   these that are being asserted by the plaintiffs in

3   their amended complaint.  The District Court studied

4   and described closely all of the process afforded to

5   the plaintiffs leading up to, during, and at the

6   confirmation process and hearing, and held that "the

7   Bankruptcy Court assiduously protected Metropolitan's

8   due process rights during the proceedings below, and

9   Metropolitan participated aggressively at each stage of

10  the pre-confirmation bankruptcy process.  The premise

11  that Metropolitan denied –– was denied due process is

12  simply unsupportable,"  Emmons-Sheepshead Bay

13  memorandum and order, 13 C.V., 5430 at star 17.  That

14  is to say the Court, this Court did its best to do its

15  job.  Counsel did the same.  But losing an argument,

16  not prevailing in an objection, not persuading the

17  Court of the merits of your position is simply not the

18  same as a denial of due process.

19          Finally, the record shows that the

20  plaintiff's allegations that the debtor negotiated in

21  bad faith in order to induce the plaintiffs to fail to

22  seek discovery and in order to avoid the disclosure of

23  certain information related to the property requires

24  some intention.  The debtor has shown that the

25  plaintiffs do not make allegations by these averments

1    sufficient to show how these events would or could have

2    contributed to fraud in the procurement of the

3    confirmation order.  In particular, the defendant has

4    established that the plaintiffs do not allege facts

5    sufficient to show or to support an inference that the

6    debtor made representations to the Court related to

7    discovery or settlements or that, viewed more broadly,

8    and having been a participant as the Court in this --

9    in these hearings, that there was the kind of

10   misrepresentation or even incomplete statement on the

11   record with and to the Court that would support a

12   conclusion or even a suggestion that a

13   misrepresentation was made to the Court to induce a

14   determination leading to the confirmation order, or

15   even leading to an intermediate ruling in this case,

16   including with respect to the request for an extension

17   of discovery.

18        The defendant has also shown in its motion

19   and by its arguments that the plaintiffs do not allege

20   facts sufficient to show that the debtor's conduct

21   procured the surrounding discovery confirmation order

22   by influencing or changing the votes of other creditors

23   who did support confirmation of the amended plan.   And

24   this Court's separate and independent scrutiny of the

25   entire record of this case and the bankruptcy main case

1    is consistent with that view.

2         In addition and separately, the plaintiffs do

3    not otherwise allege facts related to discovery during

4    the debtor's Bankruptcy case, the confirmation process,

5    or this case, sufficient to show that in any respect

6    there was other than the greatest respect for the

7    plaintiff's due process rights, and that for the same

8    reasons that any facts have been alleged that if proved

9    would establish the required reliance element of a

10   Section 1144 or other claim as is asserted under the

11   plaintiff's claim four.

12        For these reasons, and based on the entire

13   record, the defendant has shown that the allegations by

14   the plaintiffs in claim four that among other things

15   their due process rights were violated, are simply not

16   sufficient plausible to state a claim of fraud in the

17   procurement of the confirmation order.  I should note

18   that as the Judge and being the Court in which that

19   process took place, if any aspect of my review of the

20   record in this adversary proceeding, in the bankruptcy

21   case, in the context of this motion, or sua sponte, if

22   I had a concern that due process, constitutional due

23   process had not been served, it would be the Court's

24   task to fix that, and that would be fixed.  I am

25   satisfied based on the entire record, having had the

1    opportunity thoroughly to revisit, that due process to

2    each and all of the parties here was -- that the

3    requirements of due process were met, that the

4    interests of due process were served.  Again I note not

5    succeeding in your claim is simply not the same as a

6    denial of due process.

7         For all these reasons, based on the entire

8    record, I'm satisfied that the defendant has shown that

9    the plaintiffs have not set forth a claim for

10   revocation of the confirmation order pursuant to

11   Bankruptcy Section Code -- Bankruptcy Code Section 1144

12   or otherwise in claim four.  And for these reasons and

13   based on the entire record, the defendant's motion to

14   dismiss as to claim four is granted.

15        Finally, finally, I turn to the question also

16   posed by Section 1144.  And I have to apologize to the

17   parties because there may be one more finally after

18   this which is the question of leave to re-plead.  But

19   Bankruptcy Code Section 1144 separately and

20   independently requires the Court to consider the

21   question of whether a remedial order could be crafted

22   that would protect the rights of innocent third parties

23   under the confirmed plan.  This goes back to the

24   important notion of finality fundamental to the

25   Bankruptcy process, especially in the context of

1    Chapter 11.

2         In order to state a claim for relief under

3    Section 1144, the plaintiffs must demonstrate that the

4    Court could craft a remedial order while protecting the

5    rights of "any entity acquiring rights in good faith

6    reliance on the order of confirmation," Section

7    1144(1).  As explained by the Southern District of New

8    York Bankruptcy Court, this requirement matters.  As

9    that Court found, "if a Court cannot fashion a

10   revocation order that protects innocent third parties

11   who acquired rights in reliance on the confirmation

12   order, the Court is barred from revoking the

13   confirmation order, even if the order was procured by

14   fraud," In Re Delta Airlines Inc., 386 BR., at 532.

15   Strong language, strong language that is underpinned by

16   the importance of finality.

17        Here the record shows that the plaintiffs

18   expressly seek to unwind the sale of the property to

19   3112 Emmons Loft LLC, or the buyer.  The plaintiffs

20   allege that the buyer is not an innocent or outside

21   party, but rather a sham entity created as part of an

22   alleged conspiracy by the debtor and its counsel.  But

23   as noted above in the context of the plaintiff's

24   allegations of conspiracy, now quoting, I recognize the

25   language is strong, "threadbare recitals of elements of

1    a cause of action supported by mere conclusory

2    statements do not suffice to plead a claim," <u>Iqbal</u>, 556

3    U.S., at 678.

4              The plaintiffs make conclusory allegations,

5    they do not make persuasive allegations, that 3112

6    Emmons Loft LLC did not acquire its rights to the

7    property in good faith reliance on the order of

8    confirmation.  So here too and separately, the

9    defendant has shown the allegations of the amended

10   complaint count by count or taken as a whole and the

11   reasonable inferences that they support are not

12   sufficient to show that this requirement of relief

13   under Section 1144 could be met.  That is to say that

14   the buyer of the property is not an entity acquiring

15   rights in good faith reliance on the order of

16   confirmation pursuant to Section 1144.  As such, for

17   these reasons and based on the entire record, the

18   defendant has shown that the plaintiffs have not stated

19   how the Court could grant the relief they seek while

20   protecting the rights of the purchaser, the buyer here

21   of the property.  And therefore, using the words used

22   in the Delta decision, this Court, even if fraud were

23   somehow in this record, and I do not find that it is, I

24   find that it is not alleged, the Court similarly would

25   not be able to revoke the confirmation order.

1            I turn next to the discretion afforded this
2    Court under Section 1144 and whether this weighs in
3    favor or against (indiscernible/noise).

4            The parties disagree on how much discretion
5    the Court has.  That's not a surprise.  Section 1144
6    provides the Court the discretion to revoke this order,
7    but doesn't require the Court to do so if the standards
8    governing the exercise of that discretion are not met.
9    Revocation pursuant to Section 1144 is discretionary
10   and, as the bankruptcy court found in the Trico Marine
11   case, "the Court may need not revoke the confirmation
12   order if it finds fraud," 337 BR., at 811, 814.

13           The record shows that the plaintiffs have had
14   many opportunities to be heard and to litigate the
15   issues that they now present in the various counts of
16   their amended complaint.  The Court has thoroughly
17   considered the good faith of the debtor at several
18   junctures.  And I will say that every time we have a
19   status conference in a Chapter 11 case, the Court is
20   mindful of the need to move forward in good faith, and
21   whether in words are the record -- on the record or
22   simply in substance is always mindful of the question
23   of good faith.  It was specifically put to the Court
24   for determination from time to time in this case at
25   several junctures, including, among others, at the

1    point of confirmation.  The Court thoroughly considered

2    the good faith of the debtor at confirmation in the

3    face of allegation and argument, heated argument at

4    times by the plaintiffs, their creditors, that the

5    debtor had acted deceptively, improperly and the like.

6    Based on the entire record, after extensive argument

7    and careful consideration, the Court held that the

8    amended plan was proposed in good faith.  Nothing that

9    has happened since that determination has changed this

10   Court's view that indeed the amended plan was proposed

11   in good faith.

12        The Court reconsidered nearly identical

13   allegations by the plaintiff made in the motion to

14   vacate the confirmation order, and that order was

15   upheld.  On appeal the plaintiffs again attempted to

16   persuade a different Court, a Court with the ability to

17   take a fresh look at the entire record to the District

18   Court make these arguments, and that Court too found

19   that the arguments were not persuasive.

20        For the reasons stated, based on the entire

21   record, noting that this is far from the first time

22   that this Court or a Court has had the opportunity

23   carefully to consider these matters, I'm satisfied that

24   to the extent that this matter is within the discretion

25   of the Court, the defendant has shown and this Court

1    independently concludes that the circumstances of the

2    case indicate that the Court -- the Court's discretion

3    weighs in favor of dismissal of the amended complaint,

4    because among so many other reasons, it would be

5    impractical and inequitable to revoke the confirmation

6    order of the debtor's amended plan at this time.

7            I turn to the question again finally of

8    whether the plaintiff should be granted leave to re-

9    plead.  Courts have discretion in granting leave to

10   re-plead, and in the appropriate circumstance, Courts

11   wisely conclude, and this Court has often concluded

12   that leave to re-plead, which should be freely granted,

13   is appropriate.  Here I find that the plaintiffs,

14   unlike so many other cases, here the plaintiffs have

15   not demonstrated in this proceeding or in the other

16   proceedings that I rule on the record before me

17   specifically, there is not demonstrated an ability to

18   bring forth new allegations that would be sufficient

19   plausibly to state a claim of fraud in the procurement

20   of the confirmation order or for relief in the nature

21   of undoing the confirmation order for any of the

22   grounds asserted in the first, second, third, or fourth

23   claims set forth in the amended complaint.

24           I note that this complaint has been amended

25   once already, and that the proceedings in this case and

1    in the bankruptcy case have been extensive.  I note

2    also that the record indicates that the plaintiffs had

3    an extended opportunity to amend the original complaint

4    leading to the complaint that is before the Court.  The

5    record shows that the allegations in the amended

6    complaint in this form and in other forms in substance

7    to a great extent have been argued before this Court

8    several times and have also been argued by a Court with

9    the ability freshly to consider the arguments, the

10   District Court on appeal.  I note that the plaintiffs

11   objected to the second amended disclosure statement on

12   grounds including that the debtor omitted information

13   that the plaintiffs were still seeking discovery about

14   the chain of title of the property and alleged

15   unauthorized changes to the lien on the property, that

16   there were similar arguments made in the context of the

17   debtor's alleged withholding of information in the

18   context of extending discovery and the objection to the

19   amended plan where it was argued that the plan was not

20   proposed in good faith due among other things to

21   deceptive conduct by the debtor, and at many other

22   junctures the same or similar arguments have been

23   advanced.

24          As such, and based on the entire record, I'm

25   satisfied that not -- that in the complaint, in the

1    amended complaint, and in all of the proceedings had

2    and determined where these issues have been raised,

3    zealously and I'll say effectively, it's hard to

4    imagine how they could have been more effectively

5    argued, the plaintiffs have had the opportunity to

6    litigate these allegations.  They've been disclosed to

7    the creditors before their votes on the plans.  They've

8    been part of the record in so many ways as indicated by

9    the extensive docket of the bankruptcy case, where

10   after all the confirmation order was entered, and now

11   of course in this adversary proceeding after but

12   importantly -- (tape change) -- also before prior to

13   the entry of the confirmation order, and that also the

14   plaintiffs moved to vacate the confirmation and

15   appealed the denial of that motion to the District

16   Court here and there, in the Bankruptcy Court and the

17   District Court, arguments of due process and -- and the

18   other arguments that are in substance and that underlie

19   each of the four counts here were made, each of those

20   arguments carefully, thoughtfully considered, carefully

21   thoughtfully overruled by this Court and the Bankruptcy

22   Court.

23          Based on that record, based on that record,

24   based on the record before me, mindful of the standard

25   applicable with respect to leave to re-plead and motion

1    to dismiss, mindful of the fact that further pleading

2    would impose additional costs on all the parties, but

3    including the defendant here, the debtor, who has

4    litigated or re-litigated these allegations, that have

5    been found to be without merit now more than a year and

6    a half -- well I should say more than a year,

7    approaching a year and a half after confirmation of the

8    amended plan, I'm satisfied that the standard for leave

9    to re-plead is not met here, that it would be futile

10   for leave to re-plead to be granted.  And so based on

11   the entire record, I conclude that leave to re-plead

12   should be denied and dismissal should be with

13   prejudice.

14        For these reasons, all of these reasons,

15   based on the entire record, I conclude, I find and

16   conclude that the defendant's motion to dismiss is

17   granted, the amended complaint is dismissed, dismissal

18   is with prejudice and without leave to re-plead, and

19   the Court will enter appropriate order.

20        I note that this oral decision has taken more

21   than an hour to issue, perhaps an hour and 20 minutes.

22   It is therefore nearly -- first of all, I thank you for

23   your patience in listening.  Second, I note that it is

24   inevitable that to some extent I may have mis-stated a

25   citation or a quotation.  I incorporate the record of

1    the adversary proceeding, the bankruptcy case, in these

2    -- in my ruling, in my findings and conclusions.  And

3    for all of those reasons, again thanking the parties

4    for their patience, that will be the Court's

5    determination on the motion.  The pretrial conference

6    will be marked off the calender.  We'll do our best to

7    enter an appropriate order that will incorporate by

8    reference today's oral ruling.  Thank you very much for

9    your time.

10           I need to confer briefly with my courtroom

11   deputy to determine whether there's anything else we

12   need to do.  If you need a moment to -- you'll have

13   that moment.  It may take us a minute or two to come

14   back.  We'll remain, however, on the record.

15                          (Pause)

16           THE COURT:  All right.  Back on the record.

17   I'm reminded by Miss Jackson that we need a date for

18   status on the main case.  May I hear from debtor's

19   counsel as to, and also from Mr. Curtin as to what time

20   frame would be appropriate for that.

21           MS. SCHWARTZ:  Judge, this is Lori Schwartz

22   for the debtor.   In terms of a status conference, I

23   would suggest 60 days.  We'll have our December

24   disbursements on file by then and can do a

25   reconciliation with the Trustee's office with respect

1    to fees and then see what we need to do to work with

2    them to arrange for a payment to be made on those

3    outstanding obligations.

4           THE COURT:  Is there a particular week that

5    you're focusing on or portion of a month?  I'm trying

6    to get a sense.  Mr. Curtin, this strikes me as

7    something that we should probably be looking out to

8    perhaps February for.  But I -- if a sooner date is

9    helpful to the parties in moving this forward, I want

10   -- I want to do whatever works best for each and all of

11   you.  February 20th at 9:30?

12             (Judge speaks to clerk)

13          THE COURT:  That's our Chapter 11 day that

14   month.  Does that work for the parties?

15          MS. SCHWARTZ:  February 20th, Judge?

16          THE COURT:  February 20th at 9:30.

17          MS. SCHWARTZ:  Debtor is available that day,

18   yes.

19          THE COURT:  All right.  February 20th at

20   9:30.  That'll be our adjourned date for status.  And

21   the other matters have been resolved as indicated.

22   Again, it must be a long afternoon indeed to have to

23   sit and listen to a Court rule.  I'm grateful for your

24   indulgence.  And I wish you a good evening and a good

25   weekend.  Thank you so much.

1          MS. SCHWARTZ:  Thank you, Judge.

2          CLERK:  The court session is ended.

3          MR. DAHIYA:  Judge?  Hello?

4          THE COURT:  Mr. Dahiya, we're --

5          MR. DAHIYA:  (Indiscernible/static) objection

6  to the plaintiff's claim that was filed.  And I think

7  we need a resolution of that.

8          THE COURT:  Mr. Dahiya, I think at this point

9  I have ruled.  I have ruled at length.  I'm not --

10         MR. DAHIYA:  No, no, (indiscernible/static).

11         THE COURT:  I'm not certain what you refer

12  to.

13         MR. DAHIYA:  (Indiscernible/static) filed by

14  the other party, and (indiscernible) the debtor filed

15  an objection, Your Honor.  And --

16         THE COURT:  All right.  Is that something we

17  can take up at the -- at the status conference?  Sounds

18  like status.

19         MR. DAHIYA:  (Indiscernible/static.)

20         THE COURT:  Mr. Dahiya, may I invite you to

21  confer with Miss Jackson on scheduling on Monday?

22         MR. DAHIYA:  I'll do that, Judge.

23         THE COURT:  Okay.  Thank you very much.

24  Thank you so much.

25         MR. DAHIYA:  Bye.

1              THE COURT:  All right.  Bye bye.

2              CLERK:  The court session is ended.  Thank

3    you.

4                   (Proceedings Concluded)

# C E R T I F I C A T I O N

I, Linda M. Noce, the assigned transcriber, do hereby certify that the foregoing transcript of proceedings in the United States Bankruptcy Court, Eastern District of New York, on December 12, 2014, index 3:46:27 – 5:27:49, is prepared in full compliance with the current Transcript Format for Judicial Proceedings and is a true and accurate non-compressed transcript of the proceedings as recorded, and to the best of my ability.

*Linda M. Noce yr*         <u>February 23, 2015</u>

Linda M. Noce, AOC #377

AudioEdge Transcription, LLC